**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 08-cv-01669-REB-MJW

ESTATE OF ELIAS SANTISTEVAN, by Chanell Santistevan as personal representative,
ESTATE OF DEION SANTISTEVAN, by Chanell Santistevan as personal representative,
and
CHANELL SANTISTEVAN, individually,

    Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER, COLORADO, et al.,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matters before me are (1) **Defendants City and County of Denver and Gerald R. Whitman's Combined Motion and Brief for Summary Judgment** [#52][1] filed September 8, 2009; and (2) **Defendants City and County of Denver and Gerald R. Whitman's Unopposed Motion To Continue Trial and Vacate Final Trial Preparation Conference** [#58] filed September 25, 2009.  I grant the motion for summary judgment, deny the motion to continue the trial as moot, and dismiss plaintiffs' claims in their entirety.[2]

## I. JURISDICTION

---

[1] "[#52]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the papers. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P.** 56(c); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party which does not have the burden of proof at trial must show the absence of a genuine fact issue. ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Id.*** at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

## III. ANALYSIS

2

This lawsuit arises from the tragic events of August 7, 2006, when Elias Santistevan[3] shot and killed first his five-year old son, Deion, and then himself following a stand-off with Denver police.[4] The previous day, plaintiff Chanell Santistevan reported that Elias had physically assaulted her outside the Quality Auto Sound store where he was employed. After leaving Elias at work, Chanell had entrusted Deion and his sister, Yariah, to a Lorae Cordova, who is not further identified in the record. Elias forcibly took the children from Cordova and returned with them to the store. He then left the children at the store before police arrived to investigate Chanell's assault complaint.

Police officers on the scene attempted to contact Chanell to place the children with her, but could not reach her. They took the children to the home of Darlene Santistevan, Elias's mother, and left them in her custody. Some time later, Elias forcibly removed the children from Darlene's house. Although a friend later convinced Elias to let him take Yariah back to Darlene's home, Elias would not allow the friend to take Deion as well.[5] Thereafter, Elias convinced another friend, Michael Owens, to let Elias and Deion stay at Owens's apartment that night.

Denver detectives subsequently discovered Elias's whereabouts and went to Owens's apartment at approximately 8:00 a.m., on the morning of August 7, 2006.

---

[3] In their briefing, plaintiffs use the spelling "Santisteven." However, because the official caption of the case uses the spelling "Santistevan," I will use that spelling.

[4] Although the complaint originally asserted that police officers had shot and killed both Elias and Deion (**Complaint** ¶ at 3 [#1] filed August 6, 2008), plaintiffs subsequently abandoned that theory (*see* Def. Motion App., Exh. 1 at 61). Thus, the facts I recite are taken from plaintiffs' response to the motion for summary judgment.

[5] Plaintiffs claim that Elias actually went to his mother's house twice. On the first visit, he took both children with him. Subsequently, Gutierrez convinced Elias to let Gutierrez take the children back to their grandmother's home. However, Elias returned to his mother's residence and took Deion.

When Owens answered their knock, Elias fired a shot at the door.  He then took Owens, his girlfriend, her son, and Deion hostage.  Although Elias later released Owens's girlfriend and her child, he did not release Deion.  Plaintiffs claim that the police would not allow either Chanell or Darlene to speak with Elias during the stand-off.  Eventually, police employed an explosion grenade to enter the house.  Elias fled with Deion to a bathroom, where he shot Deion and then himself.  Plaintiffs maintain that although Deion was still breathing at the time he was taken out of the apartment, emergency medical personnel on the scene were ordered not to provide medical assistance to anyone other than members of the S.W.A.T. team.

In response to the motion for summary judgment, plaintiffs acknowledge that they have abandoned their claims of excessive force and failure to train and/or supervise.  However, they insist that their remaining claim for deprivation of a due process liberty interest in familial association is viable.[6]  The Tenth Circuit recognized such a right in ***Trujillo v. Board of County Commissioners of Santa Fe County***, 768 F.2d 1186, 1188-89 (10th Cir. 1985).  Nevertheless, noting that mere negligence is not sufficient to state a constitutional claim under the authority of ***Parratt v. Taylor***, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), and that, therefore, there must be "a logical stopping place for such claims," the court held that "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983."  *Id.* at 1190.  Stated differently, the alleged conduct "will work an unconstitutional deprivation of the freedom of intimate

---

[6] Obviously, this claim can be asserted only by Chanell Santistevan, and not by the Estate of Deion Santistevan.

4

association only if the conduct was directed at that right." ***Id. See also Cossio v. City and County of Denver, Colorado***, 986 F.Supp. 1340, 1348 (D. Colo. 1997) (citing cases), ***aff'd***, 1998 WL 47223 (10th Cir. Feb. 6, 1998).

Plaintiffs' evidence fails to meet this exacting standard. No reasonable jury could find that the conduct of the Denver police on which plaintiffs rely shows a directed, deliberate intent to interfere with the familial relationship between Deion and Chanell Santistevan. Indeed, police originally tried to contact Chanell to return the children to her, but were unable to reach her. Their subsequent decision to place the children in the care of their paternal grandmother at best shows negligence, which is insufficient to support a constitutional claim. Likewise, there is no reasonable inference of intent to interfere with the familial relationship in defendants' alleged failure to allow Chanell or Darlene Santistevan to speak to Elias during the stand-off or their decision to not enter the house at an earlier point. Again, at best, such decisions show little more than negligence. Finally, although the failure to allow emergency medical personnel associated with the S.W.A.T. team to render aid to Deion is the most serious allegation, such actions do not in themselves manifest any intent directed toward Chanell and Deion or their familial relationship. Even if such conduct is construed as gross negligence, it falls short of stating a constitutional violation. ***See Woodward v. City of Worland***, 977 F.2d 1392, 1399 n.11 (10th Cir. 1992), ***cert. denied***, 113 S.Ct. 3038 (1993).

Moreover, plaintiffs' have failed to argue, much less prove, that any of the actions of police on the scene were taken pursuant to an official policy or custom such as would

make the City liable for those actions. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-122, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988) (citing *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-91, 694, 98 S.Ct. 2018, 2036, 2037-38, 56 L.Ed.2d 611 (1978)).  Nor is there any allegation or evidence that police chief Whitman either personally participated in the events that precipitated this lawsuit or somehow acquiesced in the conduct of the officers under his command.  *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988).  As for the John Doe officers, plaintiffs' failure to name any of these individuals within the applicable two-year statute of limitations,  *see Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir.), *cert. denied*, 127 S.Ct. 675 (2006), would require the dismissal as to those defendants in any event, *see Garrett v. Fleming*, 362 F.3d 692, 697 (10th Cir. 2004) (noting that substitution of named defendant for John Doe amounts to adding a new party and, therefore, that amended complaint will not relate back to date of original complaint).

For all these reasons, defendants are entitled to summary judgment.  My decision in this regards pretermits consideration of defendants' motion to stay the trial.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendants City and County of Denver and Gerald R. Whitman's Combined Motion and Brief for Summary Judgment** [#52] filed September 8, 2009, is **GRANTED**;

2. That **Defendants City and County of Denver and Gerald R. Whitman's Unopposed Motion To Continue Trial and Vacate Final Trial Preparation Conference** [#58] filed September 25, 2009, is **DENIED AS MOOT**;

3. That plaintiffs' claims against all defendants are **DISMISSED WITH PREJUDICE**;

4. That judgment **SHALL ENTER** in favor of defendants, The City and County of Denver, Colorado, Chief of Police Gerald R. Whitman, in his individual and official capacity, and John Does 1-30, Members of the S.W.A.T. Unit, Law Enforcement Officers, and Detectives Employed by the Denver Police Department, each in his or her individual and official capacity, and against plaintiffs, the Estate of Deion Santistevan, By Chanell Santistevan as Personal Representative, and Chanell Santistevan, Individually as Parent of Deion Santistevan, as to all claims for relief and causes of action asserted in this action;

5. That the Trial Preparation Conference currently scheduled for Friday, October 16, 2009, at 1:30 p.m., as well as the trial, currently scheduled to commence on Monday, November 2, 2009, are **VACATED**; and

6. That defendants are **AWARDED** their costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated October 8, 2009, at Denver, Colorado.

                                          **BY THE COURT:**

Robert E. Blackburn
United States District Judge